IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN P. LEWIS,       Plaintiff | : : : : : : : : | CIVIL ACTION<br><br>NO:   2:17-cv-01409 |
| v. | | |
| MID-CENTURY INSURANCE COMPANY,       Defendant | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S EXPERT, JOHN KEZER, ESQ. FROM TESTIFYING REGARDING HIS LEGAL CONCLUSIONS AND REGARDING THE SUBJECTIVE INTENTIONS AND MOTIVATIONS OF MID-CENTURY AND ITS <u>REPRESENTATIVES</u>**

**QUESTION INVOLVED**

Whether Defendant, Mid-Century Insurance Company's Motion *in Limine* to Preclude Plaintiff's Expert, John Kezer, Esq. From Testifying Regarding His Legal Conclusions and Regarding the Subjective Intentions and Motivations of Mid-Century and Its Representatives should be granted where such testimony is not relevant and is prejudicial, misleading, and confusing the issues, and must be excluded under case law?

**Suggested Answer:   YES**

**STATEMENT OF FACTS**

This case involves an underlying claim for uninsured motorist (UM) benefits and a claim for bad faith, arising out of a motor vehicle accident on October 22, 2013.  Mid-Century will file a Motion to Bifurcate the claims for trial.  The factual and legal issues to be tried in this case in the bad faith claim is whether there is a reasonable basis for Mid-Century's actions, decisions, and evaluation of the UM claim and whether there is an alleged reckless disregard for a lack of a

reasonable basis.  *See Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 175-76, 170 A.3d 364, 377 (2017).  This inquiry requires the jury to determine whether Plaintiff has established by clear and convincing evidence from the record the three alleged grounds for his bad faith claim against Mid-Century, namely whether Mid-Century (1) performed a reasonable and fair investigation and evaluation of Plaintiff's UM claim, (2) properly valued Plaintiff's UM claim, and (3) had a reasonable basis for its settlement offers.

## ARGUMENT

The August 31, 2018 Report of Plaintiff's expert witness, John Kezer, Esq. is 55 pages long and contains numerous opinions that are impermissible expert testimony and therefore such testimony must be excluded as irrelevant under FED.R.EVID. 402 and 403.  (*See* Expert Report by John Kezer, Esq. dated August 31, 2018, Curriculum Vitae, and Expert Disclosures under Rule 26, all attached as Exhibit "A.")  Plaintiff should be precluded from presenting any evidence or expert testimony of Mr. Kezer regarding these areas, as follows:

A. Mr. Kezer's opinions and ultimate conclusions of law and fact that arise out of his personal interpretations of Pennsylvania insurance law as these matters are outside the permissible scope of expert testimony.

B. Mr. Kezer's speculative and subjective interpretations of the intent and motivations of Mid-Century employees that in many instances rely on unsupported allegations of fact and misstatements about Mid-Century's claim handling and practices.

C. Mr. Kezer's opinions that are based on his interpretation of insurance law and the application of such law to the facts of this case that are impermissible legal conclusions.

D. Mr. Kezer's erroneous legal analysis regarding the nature of uninsured motorist claims that fails to apply the correct Pennsylvania law to his analysis.  Mr. Kezer's and Plaintiff's allegation that Mid-Century violated Pennsylvania's Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.5 and applicable insurance regulations does not amount to bad faith.

    E.  To the extent that Plaintiff will present expert testimony regarding Mid-Century's conduct during discovery and any alleged discovery violations, Mid-Century requests the Court to preclude Plaintiff from entering into evidence, arguing, or presenting testimony at trial regarding Mid-Century's discovery practices and any alleged violations that pertain to discovery matters.

Motions *in limine* serve to keep "extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter." *Commonwealth v. Pikur Enterprises, Inc.*, 596 A.2d 1253, 1259 (Pa. Commw. Ct. 1991). "Motions *in limine* narrow the evidentiary issues for trial . . . ." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Relevant evidence is defined as evidence having any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. FED.R.EVID. 401. The Court should "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED.R.EVID. 403; *Daset Mining Co. v. Industrial Fuels Corp.*, 326 Pa. Super. 13, 22, 473 A.2d 584, 588 (Pa. Super. 1984). "Evidence that entails a danger of unfair prejudice means evidence that has an undue tendency to suggest a decision on an improper basis," *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1057 (Pa. Super. 2003), "or to divert the jury's attention away from its duty of weighing the evidence impartially," *see Stumpf v. Nye*, 950 A.2d 1032 (Pa. Super. 2008). Irrelevant evidence is not admissible. FED.R.EVID. 402. Any fact that is irrelevant or prejudicial is not admissible and must be precluded. FED.R.EVID. 402 and 403.

    First, the issues to which Plaintiff's expert will testify include Mid-Century's claim handling procedures, Mid-Century's company policy and philosophy, insurance industry

practices and standards, the Unfair Insurance Practices Act (UIPA) at 40 P.S. § 1171.1 et seq., and Mid-Century's compliance with each. (*See* Ex. A.) As this Court held in *Smith*, "[t]hese issues are neither particularly complex nor scientific" and "these matters are outside the permissible scope of expert testimony." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 250, 253 (W.D. Pa. 2012) (granting the insurer's motion *in limine* based on the proposed expert testimony on the same areas as in Lewis's case due to "the nature of a bad faith claim as a legal concept of general application, and the particular issues involved in the instant case" as properly for the fact finder to assess and decide).

Second, the August 31, 2018 Report of Plaintiff' expert witness, John Kezer, Esq. impermissibly gives opinions as to the ultimate legal conclusion that Mid-Century acted in bad faith, which is for the jury as the triers of fact to decide. Plaintiff must be precluded from offering into evidence any expert opinion and testimony which constitute the expert's personal interpretation and legal conclusions regarding the facts and the law. It is the role of the jury as the triers of fact, not Mr. Kezer, to interpret and apply the caselaw and statutory law and regulations to the facts of Lewis's case. "[E]xpert testimony should not invite the fact-finder to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion." *Bergman v. United Servs. Auto. Ass'n*, 1999 PA Super. 300, ¶ 9, 742 A.2d 1101, 1105 (Pa. Super. 1999) (citation omitted).

John Kezer's Expert Report contains numerous impermissible opinions which consist of his own personal interpretation and legal conclusions regarding the facts and the law, which are for the trier of fact to make. Whenever Mr. Kezer makes statements in his report "in [his] opinion," he is giving his own personal opinion and personal beliefs pertaining to Mid-Century and its claims representatives. They include but are not limited to the following:

a. Mr. Kezer's report improperly imposes his own conclusory allegation by characterizing Mid-Century's settlement offers as "effectively a denial" of Plaintiff's UM claim.  His report states: "[Mr. Paydem] made a premature, unsupported determination, effectively a denial of Mr. Lewis' UM claim, when he offered $5K to settle his claim."  (p. 31, ¶ 8.)  "[Ms. Bressi's] 'offer' [of $10,000] was an effective denial of Mr. Lewis' claim."  (p. 35, ¶ 8.)

b. Mr. Kezer's opinions are based on his "disagreement" "with [Ms. Bressi's] statements and decision."  (p. 34.)

c. "Mr. Paydem made his 'evaluation' and made factual conclusions which were not only not supported by the documentation, but which were unreasonable in light of the contents of the documentation before him at that time."  (p. 24, ¶ 4.)

d. "Mr. Paydem made medical determinations which not only he was not qualified to make but which also conflicted with the medical records in the file."  (p. 24, ¶ 5.)

e. "Mr. Paydem failed to consider all the available information in conflict with the standards of the USCSA."  (p. 24, ¶ 6.)

f. "Mr. Paydem did not conduct a timely investigation or review."  (p. 24, ¶ 7.)

g. "In my further opinion, Mr. Paydem/Mid-Century consciously and willfully ignored the totality of the records, failed to consider the public policy behind UM/UIM coverage, and cherry-picked records to support his 'offer,' which I interpret as a denial of Mr. Lewis' claim."  (p. 25, ¶ 8.)

h. "These letters and the chronology of them, in my opinion, demonstrate Mid-Century was not fulfilling its duties under the Policy, under law or under applicable insurance industry standards, to promptly or reasonably investigate Mr. Lewis' claim."  (p. 25.)

i. 'In spite of [Mr. Paydem's] awareness of an adjuster's duties, . . . he did not attempt to make or 'effect' a fair, prompt and equitable settlement even though liability was starkly clear and accepted by Mid-Century."  (p. 30, ¶ 2.)

j. "In spite of [Mr. Paydem's] awareness of the standard that he couldn't misrepresent the amount of policy limits, he didn't timely evaluate coverage or timely disclose the stacking or the available, actual limits."  (p. 30, ¶ 3.)

k. "[Mr. Paydem] did not meet or satisfy the duty, which he acknowledged existed, that an adjuster has to make a reasonable investigation into a claim before deciding to deny coverage."  (p. 30, ¶ 4.)

l. "[Mr. Paydem] put the interests of the insurance company ahead of the insured and did not equally consider the information."  (p. 31, ¶ 5.)

m. "[Mr. Paydem] knew about, but did not meet or satisfy, the duty to look at and consider all available information." (p. 31, ¶ 6.)

n. "[Mr. Paydem's] evaluations and assessments were contrary to the documentation and did not meet or satisfy his duties under the Policy or under applicable law or insurance industry standards to consider all available information." (p. 31, ¶ 9.)

o. "[Mr. Paydem's] delay in requesting the dec (declarations) page to the Policy was unjustified and unreasonable." (p. 31, ¶ 13.)

p. "Mr. Paydem's claim handling, under the facts and circumstances, did not meet or satisfy insurance industry standards and, therefore, was unreasonable." (p. 32, ¶ 16.)

q. "[Mid-Century's] actions did not exhibit fair or good faith consideration of and for Mid-Century's obligations to make payment to Mr. Lewis or to give equal or fair consideration to his injuries and his claims." (p. 32.)

r. The "nurses were substituting their judgments for those of the neurosurgeon." (p. 41.)

s. "Further, in my opinion, not only were the nurses not qualified to do so, such substitution of judgment by nurses for physicians and, in fact, a medical doctor specialist, is not reasonable." (p. 42.)

t. "[I]n my opinion, Mid-Century did not meet or satisfy its own claim handling standards" (p. 53); "Mid-Century did not timely explain the UM coverage to Mr. Lewis or to your office" (p. 53, ¶ 2); and all of the impermissible legal conclusions in paragraphs 7 through 18 under Section IV - Summary of Opinions of the Report (pp. 54-55).

Whether or not Mid-Century had a reasonable basis for the manner in which it handled and evaluated the UM claim is an issue for the jury who are the triers of fact, not an expert opinion. *See Bergman v. United Servs. Auto. Ass'n*, 1999 PA Super. 300, ¶ 9, 742 A.2d 1101, 1105 (Pa. Super. 1999). Plaintiff's expert report is conclusory and "invite[s] abdication of the [jury's] duty as fact finder." *See id.* at ¶ 7, 1108. "It is well-settled that expert opinion on the ultimate legal issue of whether a defendant acted in bad faith is inadmissible." *Smith*, 912 F. Supp. 2d at 253 (holding that Plaintiff's expert "may not testify to the portion of his report that

consists of legal conclusions or opines on the ultimate legal issue of whether [the insurer] acted in bad faith).

Mr. Kezer's Report contains inadmissible opinions on the ultimate legal issue of whether Mid-Century acted in bad faith, which are for the trier of fact to decide, such as:

   a. "Mid-Century . . . did not have a reasonable basis for what were, effectively, denials of Mr. Lewis' UM benefits under the Policy."  (p. 54, ¶ 16.)

   b. "Mid-Century recklessly disregarded the facts which supported Mr. Lewis' claim." (p. 55, ¶ 17.)

   c. "Mid-Century, consciously and knowingly, disregarded its duties under the Policy, under public policy, under applicable law and applicable insurance industry standards and, therefore, acted in violation of its duty of good faith."  (p. 55, ¶ 18.)

Plaintiff must be precluded from offering into evidence any expert opinion and testimony regarding ultimate legal conclusions that Mid-Century acted in bad faith because "an expert may not give an opinion as to the ultimate legal conclusion that an insurer acted in 'bad faith' in violation of applicable law." *Gallatin Fuels, Inc.*, 410 F. Supp. 2d at 422 (expert testimony that insurer deviated from industry standards is admissible, but testimony that insurer actually acted in bad faith is inadmissible); *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242 (W.D. Pa. 2012) (same); *Lublin v. Am. Fin. Group, Inc.*, 960 F. Supp. 2d 534, 542 (E.D. Pa. 2013) (holding that plaintiff's expert report "fails to include specific facts to support" the claims made therein, and therefore plaintiff "has not submitted evidence that reaches the clear and convincing evidence standard for bad faith").

Third, Plaintiff's expert report contains opinions unsupported by facts in the record and misstatements about Mid-Century's claim handling and practices, including subjective interpretations of the intent and motivations of Mid-Century employees, which are the bases of Plaintiff's claim that Mid-Century acted in bad faith.  (*See* Ex. A.); *see Gallatin Fuels, Inc. v.*

*Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 423 (W.D. Pa. 2006) (holding that the expert witness is precluded from presenting testimony at trial regarding "the subjective intent of the claims handlers" and may not testify as to "what he believes another individual 'thought,' 'believed,' or 'felt.' An expert simply is not in any better position than the [fact-finder] to assess another's subjective intent.")

John Kezer's Expert Report contains numerous impermissible opinions regarding the subjective intentions and motivations of Mid-Century and its claims representatives. They include but are not limited to the following:

a. "In my opinion, Ms. Kilcullen's entries evidenced the plan was to seek information which Mid-Century already had and, therefore, to intentionally delay the claim handling." (p. 32.)

b. "[I]n my opinion, [Ms. Kilcullen's] directions were intended to have Ms. Bressi and the nurse seek to find ways to diminish Mid-Century's exposure . . . ." (p. 32.)

c. "[Ms. Bressi] cherry-picked the facts, by, e.g., ignoring the treating providers' treatments, diagnoses and opinions, and, therefore, she didn't consider all available information as required by the UCSPA." (p. 34, ¶ 3.)

d. "[Ms. Bressi] intentionally rejected Dr. Oliver-Smith's opinions that the surgery, past and future medical care were as a result of the motor vehicle accident, and she ignored and didn't evaluate or consider medical records from other treating medical providers which connected the injuries and medical treatments to the MVA." (p. 35, ¶ 7.)

e. "[Ms. Bressi] rendered her own decision, based upon her experience, and she ignored all of the contents of Dr. [Oliver-]Smith's letter." (p. 39, ¶ 7.)

f. "Ms. Bressi's use of the January 30, 2014 date was arbitrary and was without any medical support and was designed and intended to reduce the claim exposures for Mid-Century and did not give fair or remotely equal consideration to Mr. Lewis' interests over those of the Company." (p. 39, ¶ 9.)

g. "[Ms. Bressi's] offer of $10,000 to settle the entire claim was not justified or supported, under, [among several things,] under applicable law, or under applicable insurance industry standards." (p. 40, ¶ 11.)

    h. "[Ms. Bressi] knowingly and purposefully forced/compelled Mr. Lewis to have to litigate his claim."  (p. 40, ¶ 14.)

Mr. Kezer's proposed testimony relates to the portions of his report that contain unsupported allegations, characterize Mid-Century's claims handling and practices in a manner not supported by the evidence, and comment on the subjective intent of the claim handlers, and this testimony is inappropriate.  *See Smith*, 912 F. Supp. 2d at 253.  Even assuming that there is some remote relevant basis for allowing expert testimony regarding these issues, under FED.R.EVID. 403 this should be excluded in the interests of justice and the exercise of sound judicial discretion because any possible probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the fact finder.

Fourth, Mr. Kezer's opinions are based on his interpretation of insurance law and the application of this law to the facts of this case, and therefore are impermissible legal conclusions. (*See* Ex. A); *see Smith*, 912 F. Supp. 2d at 253-54 (not permitting expert testimony regarding expert's construction of insurance policy because opinion on construction and coverage is not based upon reliable scientific methodology but expert's subjective interpretation of insurance case law) (citations omitted).

Fifth, rather than citing to applicable Pennsylvania caselaw in support, Mr. Kezer incorrectly makes a blanket statement that "[i]n my opinion, and based upon my experience," that "there are significant differences between the handling of a third-party claim and first-party claim.  UIM/UM claims are considered to be first-party claims."  (*See* Ex. A at 45.)  Mr. Kezer's report makes an erroneous legal analysis regarding UM claims, and fails to apply the correct Pennsylvania law to his analysis.  (*See id.*)  Contrary to Mr. Kezer's opinion and "experience" as a Colorado attorney, Pennsylvania caselaw hold that "[a]n individual making a UIM claim is making a first party claim, however the valuation of that claim may follow traditional third party

claimant concepts." *Bonenberger v. Nationwide Mut. Ins. Co.*, 2002 PA Super. 14, ¶ 8, 791 A.2d 378, 381 (Pa. Super. 2001).  Uninsured and underinsured claims "become very much like third party claims. . . . [T]hey are inherently and unavoidably arm's length and adversarial.'" *Zappile v. Amex Assurance Co.*, 2007 PA Super. 171, ¶ 12, 928 A.2d 251, 255 (Pa. Super. 2007), *appeal denied*, 596 Pa. 709, 940 A.2d 366 (2007) (citation omitted).  Thus, Mr. Kezer's legal conclusion that the Pennsylvania bad faith statute under 42 Pa.C.S. § 8371 "more than suggests . . . that a first-party UM claim, such as Mr. Lewis presented, required unique handling" is unsupported by Pennsylvania caselaw.  (*See* Ex. A at 45.)

Mr. Kezer and Plaintiff's allegation that Mid-Century violated Pennsylvania's Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.5 and applicable insurance regulations does not amount to bad faith.  (*See* Ex. A at 6, 50.)  "Violations of the UIPA and its regulations may be indicative of bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576-77 (E.D. Pa. 2000) (citing *MacFarland v. United States Fidelity & Guar. Co.*, 818 F. Supp. 108, 110 (E.D. Pa. 1993); *Romano*, 646 A.2d at 1233).  But "[s]tanding alone, this failure does not constitute clear and convincing evidence of bad faith." *Id.*  Mr. Lewis's "claims under the UIPA, which relate to allegations of delay and failure to pay the value of the claim, . . . are derivative of the bad faith claim itself." *See id.*  Therefore, an alleged violation of the UIPA does not constitute an independent cause of action in a bad faith claim, and Plaintiff should not be permitted to introduce testimony that any alleged violations of the UIPA constitute bad faith conduct.

Sixth, to the extent that Plaintiff will present expert testimony regarding Mid-Century's conduct during discovery and any alleged discovery violations, Mid-Century requests the Court to preclude Plaintiff from entering into evidence, arguing, or testifying at trial regarding Mid-Century's discovery practices and any alleged violations that pertain to discovery matters.  Under

Pennsylvania caselaw governing bad faith claims, an insurer's discovery practices and any alleged discovery violations are not further evidence of bad faith, and the Rules of Civil Procedure provide the exclusive remedy, not a bad faith claim under 42 Pa.C.S. § 8371.  "While it is true that a finding of bad faith under section 8371 may be premised upon an insurer's conduct occurring before, during or after litigation, [the Pennsylvania Superior Court has] refused to recognize that an insurer's discovery practices constitute grounds for a bad faith claim under section 8371."  *Berg v. Nationwide Mut. Ins. Co.*, 189 A.3d 1030, 1055 (Pa. Super. 2018), *reh'g denied*, No. 713 MDA 2015, 2018 Pa. Super. LEXIS 895 (Pa. Super. Aug. 8, 2018), *allocator granted*, No. 569 MAL 2018 (Pa. March 29, 2019).  "If a party believes it is subject to improper discovery, the . . . Rules of Civil Procedure provide an exclusive remedy . . . ."  *O'Donnell v. Allstate Ins. Co.*, 1999 PA Super. 161, ¶ 27, 734 A.2d 901, 909 (Pa. Super. 1999); *see Hollock v. Erie Ins. Exch.*, 2004 PA Super. 13, ¶ 14, 842 A.2d 409, 415 (Pa. Super. 2003) (same).

"As [the Pennsylvania Superior Court] explained in *O'Donnell* and *Hollock*, section 8371 is designed to provide a remedy for bad faith conduct by an insurer in its capacity as an insurer . . . by virtue of the parties' insurance policy and not as a legal adversary in a lawsuit filed against it by an insured.  Discovery violations are governed under the exclusive provisions of the . . . Rules of Civil Procedure."  *Berg*, 189 A.3d at 1055.  As the *Berg* Court makes clear, an insurer involved in litigation over the value of a UM or UIM claim is entitled to raise all legal defenses available to it as a matter of law.  *Berg*, 189 A.3d at 1056 (stating that just as "Plaintiffs had the right to prosecute their case zealously within the bounds of the law, . . . [an insurer has] the right to defend itself if it believed its personnel did not act in bad faith").

Based on the foregoing, Mr. Kezer should be precluded from testifying regarding all of the above portions of his report because such testimony is unsupported by the record evidence and not relevant, is prejudicial and confusing the issues and misleading the fact finder.

## CONCLUSION

Defendant, Mid-Century Insurance Company respectfully requests that this Honorable Court enter the proposed Order, granting Defendant's Motion *in Limine* to Preclude Plaintiff's Expert, John Kezer, Esq. From Testifying Regarding His Legal Conclusions and Regarding the Subjective Intentions and Motivations of Mid-Century and Its Representatives.

Respectfully submitted,

FINEMAN KREKSTEIN & HARRIS P.C.

By: //s/ Susan J. French
Susan J. French, Esquire
Attorney I.D. No.:  51112
/s/ Hien T. Pham
Hien T. Pham, Esquire
Attorney I.D. No.:  314478
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103
(215) 893-9300
sfrench@finemanlawfirm.com
hpham@finemanlawfirm.com

Dated:  December 6, 2019                             Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I, Susan J. French, Esquire, hereby certify that a true and correct copy of the foregoing Defendant's Motion *in Limine* and Memorandum of Law have been electronically filed with the Court and served, via the Court's electronic filing system, on the below listed counsel of record, on the date indicated below:

Andrew G. Rothey, Esquire
Jon R. Perry, Esquire
Rosen, Louik & Perry, P.C.
437 Grant Street, Suite 200
The Frick Building
Pittsburgh, PA  15219
*Attorneys for Plaintiff*

Rosemary A. Marchesani, Esquire
Cipriani & Werner P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228
*Co-Counsel for Defendant*

                                                          FINEMAN KREKSTEIN & HARRIS P.C.

                                    By:    /s/ Susan J. French
                                                Susan J. French, Esquire
                                                Attorney I.D. No.:  51112
                                                Ten Penn Center
                                                1801 Market Street, Suite 1100
                                                Philadelphia, PA 19103
                                                (215) 893-9300
                                                sfrench@finemanlawfirm.com
Dated:  December 6, 2019                      Attorneys for Defendant