**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAWN P. LEWIS, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | NO:   2:17-cv-01409 |
| v. | : | |
| | : | |
| MID-CENTURY INSURANCE COMPANY, | : | |
| | : | |
|     Defendant | : | |

___

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM PRESENTING THE EXPERT TESTIMONY OF JOHN KEZER, ESQUIRE AT TRIAL**
___

{01659707;v2}

## **INDEX OF EXHIBITS**

Exhibit A    Expert Report of John Kezer, Esquire, dated August 31, 2018

Exhibit B    Curriculum Vitae of John Kezer

Exhibit C    John Kezer's Rule 26 Expert Disclosures

Exhibit D    Excerpts from Deposition Testimony of John Kezer, Esquire, dated July 30, 2019

**QUESTION INVOLVED**

Whether Defendant, Mid-Century Insurance Company's Motion *in Limine* to Preclude Plaintiff From Presenting the Expert Testimony of John Kezer, Esquire at Trial should be granted where: (a) under Pennsylvania caselaw, it is the role of the trier of fact to determine whether Mid-Century acted in bad faith; (b) bad faith is a legal concept which does not require technical or specialized knowledge to be presented to the jury in this case; and (c) Mr. Kezer is not qualified to testify regarding bad faith and insurance regulations in Pennsylvania under FED.R.EVID. 702 and the *Daubert* standards?

**Suggested Answer:   YES**

**STATEMENT OF FACTS**

This case involves an underlying claim for uninsured motorist (UM) benefits and a claim for bad faith, arising out of a motor vehicle accident on October 22, 2013.  Mid-Century will file a Motion to Bifurcate the claims for trial.  The factual and legal issues to be tried in this case in the bad faith claim is whether there is a reasonable basis for Mid-Century's actions, decisions, and evaluation of the UM claim and whether there is an alleged reckless disregard for a lack of a reasonable basis.  *See Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 175-76, 170 A.3d 364, 377 (2017).  This inquiry requires the jury to determine whether Plaintiff has established by clear and convincing evidence from the record the three alleged grounds for his bad faith claim against Mid-Century, namely whether Mid-Century (1) performed a reasonable and fair investigation and evaluation of Plaintiff's UM claim, (2) properly valued Plaintiff's UM claim, and (3) had a reasonable basis for its settlement offers.

Plaintiff proposes to introduce at trial the expert testimony of John Kezer, Esquire as a bad faith expert on Pennsylvania law.  (*See* Expert Report of John Kezer, Esquire dated August

31, 2018, attached as Exhibit "A.")

## ARGUMENT

Plaintiff's expert, John Kezer, Esquire should be precluded from testifying at trial because in this bad faith case, expert testimony is not necessary to assist the jury, who is the trier of fact, in assessing the facts and making conclusions of law regarding bad faith which is a task for the fact finder, the matters to be decided are not complicated, and Plaintiff's proposed expert opinion is subjective speculation unsupported by any specialized knowledge.

**I.    Legal Standard for Motions *in Limine*.**

Motions *in limine* serve to keep "extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter." *Commonwealth v. Pikur Enterprises, Inc.*, 596 A.2d 1253, 1259 (Pa. Commw. Ct. 1991). "Motions *in limine* narrow the evidentiary issues for trial . . . ." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Relevant evidence is defined as evidence having any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. FED.R.EVID. 401.

The Court should "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED.R.EVID. 403; *Daset Mining Co. v. Industrial Fuels Corp.*, 326 Pa. Super. 13, 22, 473 A.2d 584, 588 (Pa. Super. 1984). "Evidence that entails a danger of unfair prejudice means evidence that has an undue tendency to suggest a decision on an improper basis," *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1057 (Pa. Super. 2003), "or to divert the jury's attention away from its duty of weighing the evidence impartially," *see Stumpf v. Nye*, 950 A.2d 1032 (Pa. Super. 2008).

Irrelevant evidence is not admissible. FED.R.EVID. 402. Any fact that is irrelevant or prejudicial is not admissible and must be precluded. FED.R.EVID. 402 and 403.

II. **John Kezer, Esquire's Testimony Should Be Excluded Because under Pennsylvania Caselaw, it Is the Role of the Trier of Fact to Determine Whether Mid-Century Acted in Bad Faith; Bad Faith Is a Legal Concept Which Does Not Require Technical or Specialized Knowledge to Be Presented to the Jury in this Case; and Mr. Kezer Is Not Qualified to Testify Regarding Bad Faith and Insurance Regulations in Pennsylvania Under FED.R.EVID. 702 and the *Daubert* Standards.**

    A. **John Kezer's Testimony Would Usurp the Jury's Role.**

The Pennsylvania Superior Court and the Third Circuit have affirmed that "bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact." *Dattilo v. State Farm Ins. Co.*, 1997 U.S. Dist. LEXIS 16188, *12 (E.D. Pa. Oct. 17, 1997), *aff'd*, 168 F.3d 478 (3d Cir. 1998); *accord, Bergman v. United Servs. Auto. Ass'n*, 1999 PA Super. 300, ¶ 14, 742 A.2d 1101, 1107 (Pa. Super. 1999) (adopting and relying on *Dattilo*). "An expert witness is a witness who possesses knowledge not within ordinary reach or understanding, and who, because of this knowledge, is specially qualified to address a particular subject." *Bergman v. United Servs. Auto. Ass'n*, 1999 PA Super. 300, ¶ 7, 742 A.2d 1101, 1105 (Pa. Super. 1999).

Like Lewis's case which involved a UM claim, "both *Dattilo* and *Bergman* involved claims by insureds alleging that their insurer acted in bad faith in processing an underinsured motorist ("UIM") claim." *See Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 250 (W.D. Pa. 2012). In *Dattilo* the trial court "'doubted both the appropriateness and the effectiveness of allowing the insureds' expert to testify because, although the expert qualified as a person experienced in claims handling and adjusting on behalf of insurers, *Dattilo* was not a malpractice case in which the insurer's conduct would be judged by the standards of the insurance industry.'" *Id.* The Pennsylvania Superior Court held in *Bergman* that expert testimony offered by a

plaintiff in a bad faith case may be unnecessary.  "If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth."  *Bergman*, 1999 PA Super. 300, ¶ 8, 742 A.2d at 1105 (citation omitted); *see Bonenberger v. Nationwide Mut. Ins. Co.*, 2002 PA Super. 14, ¶ 11, 791 A.2d 378, 382 (Pa. Super. 2001) (admission or exclusion of expert testimony in cases involving a bad faith claim "remain a matter within the sound discretion of the trial court").

"[E]xpert testimony should not invite the fact-finder to abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion."  *Id.* at ¶ 9, 1105 (citation omitted).  It is the role of the trier of fact to interpret and apply the caselaw and statutory law and regulations to the facts of Lewis's case.  The primary purpose of the expert testimony must be to assist the trier of fact in understanding complicated matters . . . ."  *Id.*  In *Bergman*, the Pennsylvania Superior Court relied on the *Dattilo* court's reasoning that "the [expert] witness' opinion [was] nothing more than subjective speculation unsupported by any scientific or specialized knowledge . . . ."  *Id.* at ¶ 14, 1107.

Mr. Kezer's report impermissibly attempts to give opinions regarding the subjective intentions and motivations of the claims handlers and Mid-Century, which are the bases of Plaintiff's claim that Mid-Century acted in bad faith.  Mr. Kezer's report also impermissibly concludes that "Mid-Century recklessly disregarded the facts which supported Mr. Lewis' claim" and "in [his] opinion" "Mid-Century, consciously and knowingly, disregarded its duties under the Policy, under public policy, under applicable law and applicable insurance industry standards and, therefore, acted in violation of its duty of good faith."  (*See* John Kezer's Expert Report, p. 55, ¶¶ 17-18); *see Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242 (W.D. Pa. 2012) (expert

opinion on the ultimate legal issue of whether an insurer acted in bad faith is inadmissible); *Gallatin Fuels, Inc.*, 410 F. Supp. 2d at 422 (same).

The issues to which Plaintiff's expert will testify include Mid-Century's claim handling procedures, Mid-Century's company policy and philosophy, insurance industry practices and standards, the Unfair Insurance Practices Act (UIPA) at 40 P.S. § 1171.1 et seq., and Mid-Century's compliance with each. (*See* Ex. A.) As this Court held in *Smith*, "[t]hese issues are neither particularly complex nor scientific" and "these matters are outside the permissible scope of expert testimony." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 250, 253 (W.D. Pa. 2012) (granting the insurer's motion *in limine* based on the proposed expert testimony on the same areas as in Lewis's case due to "the nature of a bad faith claim as a legal concept of general application, and the particular issues involved in the instant case" as properly for the fact finder to assess and decide).

Citing *Smith*, this Court also held in *Schifino* that "the concept of bad faith is within the ken of the average layperson such that expert testimony is not necessary in this matter. A reasonable juror certainly possesses the requisite knowledge to assess the bad faith allegation, which is equally neither particularly complex nor scientific." *Schifino v. Geico Gen. Ins. Co.*, No. 2:11-cv-1094, 2013 U.S. Dist. LEXIS 76532, at *5-6 (W.D. Pa. May 31, 2013) (precluding plaintiff's bad faith expert from testifying because the "claim involves whether [the insurer] has a reasonable basis for the manner in which it handled Plaintiff's claim, an issue within the province of the jury as its role").

In the present case, the testimony Mr. Kezer proposes to offer on the bad faith issue, with respect to Mid-Century's claim handling procedures and compliance with the regulations governing insurance practices and standards, does not involve "highly sophisticated insurance

concepts or practices, or call for special knowledge, skill or experience to understand and analyze [Mid-Century's] conduct." *See Bergman*, 1999 PA Super. 300, ¶ 7, 742 A.2d at 1108. The factual issues that the jury, as the fact finder in this trial, will be required to assess and determine are not complicated matters and relate to facts and events regarding whether Mid-Century (1) performed a reasonable and fair investigation and evaluation of Plaintiff's UM claim, (2) properly valued Plaintiff's UM claim, and (3) had a reasonable basis for its settlement offers.  Whether or not Mid-Century had a reasonable basis for the manner in which it handled the UIM claim is an issue for the trier of fact, not an expert opinion.  *See id.* at ¶ 9, 1105.  Plaintiffs' expert report is conclusory and "invite[s] abdication of the court's duty as fact finder." *See id.* at ¶ 7, 1108.

> **B.** **John Kezer, Esquire Is Not Qualified to Testify Regarding Bad Faith and Insurance Regulations in Pennsylvania Under FED.R.EVID. 702 and the *Daubert* Standards Because He Learned Pennsylvania Law for fhe Purpose of this Litigation After Being Hired, and His Sole Practice Is in Colorado.**

John Kezer is not qualified under FED.R.EVID. 702 and the *Daubert* standards to testify as an expert on Pennsylvania law regarding bad faith because he practices law in Colorado and has never studied or had experience with Pennsylvania bad faith law until he was hired to write his report and testify in this case.  (*See* Expert Report by John Kezer, Esquire dated August 31, 2018, attached as Exhibit "A"); *see* FED.R.EVID. 702; *see Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  Mr. Kezer, an attorney who practices law in Colorado, is not qualified to testify as a bad faith expert under Pennsylvania law because he is not licensed to practice in Pennsylvania and is unfamiliar with the standards for bad faith in Pennsylvania and insurance practices in Pennsylvania.

In further support that Plaintiff should not be permitted to introduce improper legal conclusions of Mr. Kezer regarding Pennsylvania insurance law and bad faith caselaw, is the fact

that Mr. Kezer is not a Pennsylvania attorney who practices law in Pennsylvania, but is a Colorado attorney who claims that he is familiar with Colorado law and practices Colorado law. (*See* Ex. A at 2-4.)  Mr. Kezer is not qualified to testify as a bad faith expert under Pennsylvania law because he is not licensed to practice in Pennsylvania and is unfamiliar with the standards for bad faith in Pennsylvania and insurance practices in Pennsylvania.

> Federal Rule of Evidence 702 governing testimony by expert witnesses states:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.  The party offering the expert testimony has the burden of proving admissibility by a preponderance of the evidence.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743-44 (3d Cir. 1994).  An expert witness's qualification stems from his or her "knowledge, skill, experience, training, or education."  FED.R.EVID. 702.  Therefore, the witness must have "specialized expertise" related to the nature of the witness's proposed opinions to serve as an expert.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003).  In *Kumho*, the U.S. Supreme Court addressed the applicability of the *Daubert* standards beyond "scientific" expert testimony finding that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of his testimony."  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999).

FED.R.EVID. 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).  Lack of qualifications is relevant to the reliability

analysis and is a factor tending to discredit reliability. *See* FED.R.EVID. 702; *see Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1994).

In *Daubert*, the Supreme Court provided guidance to the federal district courts applying Federal Rule of Evidence 702 stating that "district courts serve as the gatekeepers and must determine the reliability of the proffered testimony." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), the Supreme Court made it clear that the objective of a district court's gatekeeping role "is to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." In *Kumho*, the U.S. Supreme Court addressed the applicability of the *Daubert* standards beyond "scientific" expert testimony finding that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999). In *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997), the Court clarified the district courts' gatekeeping role holding as is at issue on this motion: a district court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."

The trial court must address a "trilogy of restrictions" before admitting expert testimony – qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). First, a proffered expert must possess specialized knowledge, training, or skill. *Schneider*, 320 F.3d at 404 (citation omitted). Second, for testimony to be considered sufficiently reliable, "it must be

based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'' and "the expert must have 'good grounds' for his or her belief." *Id.* (quotation omitted).  Finally, the expert's testimony must "fit" or "be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider*, 320 F.3d at 405); *see also In re Paoli*, 35 F.3d at 743 ("[A]dmissibility depends in part on the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.") (quotation omitted).

    Mr. Kezer testified that he has no experience in adjusting and placing values on claims that relate to accidents or incidents that occurred in Pennsylvania, until the present case when he was hired to testify in this case and to draft his 8/31/18 Report.  (Kezer Dep. 44:3-7.)  Instead, Mr. Kezer stated that he "performed independent research" <u>after</u> being hired for this case regarding statutory and case law standards for insurance claims in Pennsylvania in order to render his opinions regarding Pennsylvania law and standards.  (Ex. A at 2, 55.)

    In *Daubert II*, after the U.S. Supreme Court remanded the Daubert case to the Ninth Circuit Court of Appeals, the Ninth Circuit's use of the term "independent research" is clear, which Mr. Kezer misapplied and improperly used the term in his report:

> [o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of *research they have conducted independent of the litigation*, or whether they have developed their opinions expressly for purposes of testifying.  That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony . . . .
>
> [But] an expert [who] *testifies based on research he has conducted independent of the litigation* provides important, objective proof [of reliability]. . . . *[I]ndependent research* carries its own indicia of reliability, as it is conducted, so to speak, in the usual course of business . . . .

*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1994) (emphases added). Under *Daubert*, "independent research" is research "conducted independent of the litigation," which means that the expert witness's testimony is based on research he or she conducted prior to being retained as an expert for the litigation. *See id.*

In his report, Mr. Kezer uses the language from the *Daubert* factor of "independent research" to attempt to create a semblance that his "methodology" comports with FED.R.EVID. 702 and the *Daubert* standard, but it does not. (*See* Ex. A at 2, 55.) Mr. Kezer's report states that he studied and researched the Pennsylvania statutes, regulations, and caselaw governing bad faith and insurance practices and standards after he was hired to and for the purpose of giving expert testimony in this case. While Mr. Kezer stated that his opinions and report are based on legal research that he conducted, his report and deposition testimony indicate that he did not perform the "independent research" under *Daubert* as he claimed. Therefore, he cannot be considered to be an expert on Pennsylvania bad faith law and Pennsylvania insurance law because his analysis was prepared solely for litigation purposes.

Mr. Kezer testified that he became "familiar with bad faith law in Pennsylvania" "[b]y studying the case law after this engagement began":

> Q. Okay. Have you ever adjusted an uninsured or underinsured motorist claim?
> A. Adjusted? No.
>
> Q. Okay. Are you familiar with bad faith law in Pennsylvania?
> A. Yes.
>
> Q. And where did you obtain this familiarity?
> A. By studying the case law after this engagement began.
>
> Q. Okay. So you learned about Pennsylvania law for this case?
> A. Yes.

(Kezer Dep. 45:5-16.)  Since all of Mr. Kezer's relevant experience is in Colorado, he should not be considered an expert on Pennsylvania insurance regulations.  His law degree is from Colorado and Colorado is the only state he is admitted to practice in.  Based on his CV, he never worked as a claims adjuster for an insurance company and prior to being a practicing attorney, his work in government related to "regulating the business of insurance" mostly handling the budget in the Division of Insurance.  (*See* Curriculum Vitae of John Kezer, attached as Exhibit "B.")  This experience related to "Colorado insurance laws and regulations."   (*Id.*)  Prior to the present case, Mr. Kezer has never worked in Pennsylvania or with the Pennsylvania bad faith statute.  While Mr. Kezer has the educational and experiential background to qualify him as an insurance expert in Colorado, his testimony and opinions on Pennsylvania on bad faith should be excluded.  He does not possess the specialized knowledge or experience on Pennsylvania bad faith to form an expert opinion that will help the trier of fact in this Pennsylvania case.

Mr. Kezer's statements in his report demonstrate that he, an attorney who practices law in Colorado, is not qualified to opine on matters involving Pennsylvania insurance claims and Pennsylvania law regarding insurance practices and bad faith allegations made by Pennsylvania litigants.  Mr. Kezer's Expert Report twice incorrectly cites to Pennsylvania's Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.1 et seq., including § 1171.5, as 40 P.S. § 1174.5 which does not exist.  (*See* Ex. A at 6, 50.)  Further, in many instances at his deposition on July 30, 2019, Mr. Kezer bases his understanding, interpretation, and application of the bad faith law in Pennsylvania to the facts of this case by drawing "parallels" and "similarities" between Colorado law and Pennsylvania law on bad faith.  (*See* Excerpts from Deposition Testimony of John Kezer, Esquire dated July 30, 2019, attached as Exhibit "D.")

Mr. Kezer testified at his deposition that "[t]he statutes in Pennsylvania do not provide a private right of action, but the case law – similar, again, to Colorado's – establishes that those standards do present standards for conduct for insurers, which can be presented in support of a bad faith claim."  (Kezer Dep. 49:3-8.)  Mr. Kezer's Rule 26 Expert Disclosures of the cases in which he was engaged as an expert witness indicate that these cases were all brought in Colorado, wherein he was hired to address insurance claims under Colorado statutes, regulations, and caselaw.  (*See* John Kezer's Rule 26 Expert Disclosures, attached as Exhibit "C.")  Mr. Kezer's experience with automobile insurance cases involving bad faith claims was based only from his "expert witness work" and handling "some claims for personal clients . . . ."  (Kezer Dep. 43:12-16.)  All of these cases in which he was hired as an expert witness dealt with accidents in Colorado and the application of Colorado law, not Pennsylvania law and claims handling practices in cases in Pennsylvania courts.  (*Id.* at 17-21.)

Mr. Kezer's report does not cite to any caselaw that he stated he has researched to support his opinions and contentions, besides the two-prong test for the bad faith claim under *Rancosky*.  Instead of citing to applicable Pennsylvania caselaw in support, Mr. Kezer incorrectly makes a blanket statement that "[i]n my opinion, and based upon my experience," that "there are significant differences between the handling of a third-party claim and first-party claim.  UIM/UM claims are considered to be first-party claims."  (*See* Ex. A at 45.)  Mr. Kezer's report makes an erroneous legal analysis regarding UM claims, and fails to apply the correct Pennsylvania law to his analysis.  (*See id.*)  And his opinions is based on this flawed analysis of the law and application of the law to the facts of this case.  Contrary to Mr. Kezer's opinion based on his "experience" as a Colorado attorney, Pennsylvania caselaw hold that "[a]n individual making a UIM claim is making a first party claim, however the valuation of that claim

may follow traditional third party claimant concepts." *Bonenberger v. Nationwide Mut. Ins. Co.*, 2002 PA Super. 14, ¶ 8, 791 A.2d 378, 381 (Pa. Super. 2001). Uninsured and underinsured claims "become very much like third party claims. . . . [T]hey are inherently and unavoidably arm's length and adversarial.'" *Zappile v. Amex Assurance Co.*, 2007 PA Super. 171, ¶ 12, 928 A.2d 251, 255 (Pa. Super. 2007), *appeal denied*, 596 Pa. 709, 940 A.2d 366 (2007) (citation omitted). Thus, Mr. Kezer's legal conclusion that the Pennsylvania bad faith statute under 42 Pa.C.S. § 8371 "more than suggests . . . that a first-party UM claim, such as Mr. Lewis presented, required unique handling" is unsupported by Pennsylvania caselaw. (*See* Ex. A at 45.)

Mr. Kezer and Plaintiff's allegation that Mid-Century violated Pennsylvania's Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.5 and applicable insurance regulations does not amount to bad faith. (*See* Ex. A at 6, 50.) "Violations of the UIPA and its regulations may be indicative of bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576-77 (E.D. Pa. 2000) (citing *MacFarland v. United States Fidelity & Guar. Co.*, 818 F. Supp. 108, 110 (E.D. Pa. 1993); *Romano*, 646 A.2d at 1233). But "[s]tanding alone, this failure does not constitute clear and convincing evidence of bad faith." *Id.* Mr. Lewis's "claims under the UIPA, which relate to allegations of delay and failure to pay the value of the claim, . . . are derivative of the bad faith claim itself." *See id.* Therefore, an alleged violation of the UIPA does not constitute an independent cause of action in a bad faith claim, and Plaintiff should not be permitted to introduce testimony that any alleged violations of the UIPA constitute bad faith conduct.

## **CONCLUSION**

Defendant, Mid-Century Insurance Company respectfully requests that this Honorable Court enter the proposed Order, granting Defendant's Motion *in Limine* to Preclude Plaintiff From Presenting the Expert Testimony of John Kezer, Esquire at Trial.

    Respectfully submitted,

    FINEMAN KREKSTEIN & HARRIS P.C.

By:   //s/ Susan J. French
      Susan J. French, Esquire
      Attorney I.D. No.: 51112
      /s/ Hien T. Pham
      Hien T. Pham, Esquire
      Attorney I.D. No.: 314478
      Ten Penn Center
      1801 Market Street, Suite 1100
      Philadelphia, PA 19103
      (215) 893-9300
      sfrench@finemanlawfirm.com
      hpham@finemanlawfirm.com

Dated: December 6, 2019     Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I, Susan J. French, Esquire, hereby certify that a true and correct copy of the foregoing Defendant's Motion *in Limine* and Memorandum of Law have been electronically filed with the Court and served, via the Court's electronic filing system, on the below listed counsel of record, on the date indicated below:

Andrew G. Rothey, Esquire
Jon R. Perry, Esquire
Rosen, Louik & Perry, P.C.
437 Grant Street, Suite 200
The Frick Building
Pittsburgh, PA  15219
*Attorneys for Plaintiff*

Rosemary A. Marchesani, Esquire
Cipriani & Werner P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228
*Co-Counsel for Defendant*

|  |  |
|---|---|
|  | FINEMAN KREKSTEIN & HARRIS P.C. |
| By: | /s/ Susan J. French |
|  | Susan J. French, Esquire |
|  | Attorney I.D. No.:  51112 |
|  | Ten Penn Center |
|  | 1801 Market Street, Suite 1100 |
|  | Philadelphia, PA 19103 |
|  | (215) 893-9300 |
|  | sfrench@finemanlawfirm.com |
| Dated:  December 6, 2019 | Attorneys for Defendant |

{01659707;v2}

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN P. LEWIS, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | NO:   2:17-cv-01409 |
| v. | : | |
| | : | |
| MID-CENTURY INSURANCE COMPANY, | : | |
| | : | |
|     Defendant | : | |

## MOTION *IN LIMINE* CERTIFICATE UNDER LOCAL RULE 16.1.C.4

Counsel for Defendant hereby certify that we conferred with Plaintiff's counsel in an effort to reach agreement on the issues raised by Defendant's Motion *in Limine* to Preclude Plaintiff From Presenting the Expert Testimony of John Kezer, Esquire at Trial. The parties made a reasonable effort to reach agreement.

    Respectfully submitted,

    FINEMAN KREKSTEIN & HARRIS P.C.

    By:    /s/ Susan J. French
             Susan J. French, Esquire
             Attorney I.D. No.:  51112
             Ten Penn Center
             1801 Market Street, Suite 1100
             Philadelphia, PA 19103
             (215) 893-9300
             sfrench@finemanlawfirm.com

Dated:  December 6, 2019             Attorneys for Defendant

{01659707;v2}